Michael J. Flannery (SBN 196266)
CUNEO GILBERT & LADUCA, LLP
300 North Tucker Boulevard, Suite 801
St. Louis, MO 63101
Telephone: (314) 226-1015
mflannery@cuneolaw.com

*Attorney for Plaintiff Andrew Roley and the Putative Class*

(additional counsel on signature page)

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREW ROLEY, an individual, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOPRO, INC. f/k/a WOODMAN LABS, INC.,<br><br>Defendant. | No. _____<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff Andrew Roley (hereinafter "Plaintiff"), on behalf of himself and all others similarly situated (the "Class" as defined below), and brings this class action against Defendant GoPro, Inc. f/k/a Woodman Labs, Inc. (hereinafter "GoPro") alleging as follows upon personal knowledge as to his actions and upon information and belief based upon the investigation of his attorneys as to all other facts alleged in the Class Action Complaint:

**INTRODUCTION**

1. GoPro promotes itself as the world's leading manufacturer of "activity" video recording devices: compact, lightweight video cameras that may be worn by a human, installed on a vehicle, or linked to a computerized device or network.

2. Among several models of said devices, GoPro manufactures and sells the Hero3 video camera, which records video onto a memory card located inside the device, and the Battery BacPac, which attaches to the Hero3 "to increase battery life."

3. Due to problems with the Hero3, it does not operate properly or as advertised, and it is not suitable for both the ordinary and particular purposes for which it is intended to be used. Those problems include, but are not limited to, the following:

    a. When the Hero3 is set to operate "looping mode" and once the internal memory card in the Hero3 is full, the Hero3 displays the message that "Not Enough SD Card Space". The Hero3 is advertised to continue recording by overwriting the oldest data on the memory card. This feature does not operate as advertised.

    b. The Hero3 unpredictably turns off during recording.

    c. When power is interrupted, the Hero3's internal clock sometimes uses and displays the incorrect date and time, thereby mislabeling the time when video recording occurred.

    d. The Hero3 does not charge correctly when attached to GoPro's Battery BacPac.

The Hero3 fails to turn on when the "power" button is pressed.

4. If the Hero3 performed as GoPro represents and advertises, then it could be used for surveillance, or it could be used as a "transit data collection device," meaning a device that allows motorists or other vehicle operators to record occurrences while operating their vehicles.

5. For instance, the CBS News magazine program *60 Minutes* aired a story on GoPro cameras on November 10, 2013. That story recounted a "now infamous" incident where "motorcyclists in New York tangled with the driver of an SUV."[1]

---

[1] The video is available on YouTube at https://www.youtube.com/watch?v=INfElroIKO0 (last visited April 12, 2014).

6. GoPro knows or had reason to know that the Hero3's power button, looping mode, date retention, uninterrupted recording, and battery charging features are integral and desirable to purchasers, for applications including but not limited to use for surveillance or as a transit data collection device.

   a. GoPro knows or had reason to know that the power button, looping mode, date retention, uninterrupted recording, and battery charging features induce consumers to purchase the Hero3 camera.

   b. GoPro knows or had reason to know that the Hero3's power button, looping mode, date retention, uninterrupted recording, and battery charging features do not operate properly or as advertised.

7. Because the Hero3 does not operate properly or as advertised, GoPro breached warranties on the Hero3.

8. Because the Hero3 does not operate properly or as advertised, GoPro violated the consumer protection laws of California and other states.

**PARTIES**

9. Plaintiff Roley is a natural person and citizen residing in the Port Hueneme, Ventura County, California.

10. Defendant GoPro is a Delaware corporation with its principal place of business located at 3000 Clearview Way, San Mateo, California 94402 and doing business in the State of California and throughout the United States. It is formerly known as Woodman Labs, Inc., which incorporated in California and began doing business as GoPro in February 2004. In December 2011, GoPro reincorporated in Delaware, and in February 2004, it changed its name to GoPro, Inc. GoPro manufactures and sells the Hero3 camera and Battery BacPac to consumers in California and throughout the United States.

**JURISDICTION AND VENUE**

11. GoPro maintains its corporate headquarters in California and conducts substantial business in California and throughout the United States in connection with the marketing and sale of the Hero3. This Court has jurisdiction over GoPro because it has intentionally availed itself of the markets and laws of the State of California.

12. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because the majority of class members are citizens of different states than GoPro and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

13. Venue is proper pursuant to 28 U.S.C. § 1391 because GoPro is headquartered in the Northern District of California and a substantial part of the events at issue in this Class Action Complaint occurred there.

**FACTUAL ALLEGATIONS**

**A.  General Allegations**

14. GoPro claims that it is "maker of the world's most versatile and durable cameras" and that the Hero3 "makes it possible to capture and share your life like never before."

15. Notwithstanding such claims, the Hero3 does not work properly or as advertised, and it is not suitable for the ordinary purposes for which it is used.

16. Among other problems, the Hero3 does not have a properly functioning "looping mode."

    a. In advertised specifications for the Hero3, as posted on the GoPro website and elsewhere, the "advanced features" of the Hero3 include "Looping Record (Video)."

    b. The user manuals for the Hero3 state, "Looping Video mode allows you to record a continuously looping video that overwrites itself[.]"

    c. After it is placed into looping mode and the memory card is full, the Hero3 does not reliably continue recording. Instead of overwriting the oldest video data on its memory card, the Hero3 indicates "Not Enough SD Card Space" and ceases recording.

17. Moreover, the Hero3 unpredictably turns off during recording.

18. When the Hero3 suffers sudden loss of power, its internal clock sometimes does not work correctly, using and displaying the incorrect date and time on recorded video.

19. The Hero3 does not correctly charge when attached to the BacPac. It also fails to turn on when the power button is pressed.

20. Because of these problems, the camera is not suitable for surveillance, transit data collection device or other general uninterrupted video recording.

21. GoPro has issued multiple software updates for the Hero3, most recently update 3.0, which was released on or around July 29, 2013. Even after purchasers of the Hero3 install these updates, the Hero3 continues to have problems.

22. The CBS News magazine program *60 Minutes* aired a story on GoPro cameras on November 10, 2013. That story included an interview with Nick Woodman, the CEO of GoPro and Woodman Labs.

    a. In that story, *60 Minutes* mentioned "[t]he new model camera Woodman released in 2012." This is a reference to the Hero3, which GoPro released in late 2012.

    b. Regarding this model, *60 Minutes* reported, "Some customers complained that their cameras suddenly stopped working. GoPro had to scramble to fix the problem with software updates."

    c. Responding to this information in his interview, Mr. Woodman said, "We launched a product before the software was fully, fully, fully mature. And we didn't know it."

23. When purchasers informed GoPro about Hero3's failures in looping mode, it attributed these failures to use of non-compatible memory cards in the Hero3.

    a. The Hero3 is not sold with a memory card. The Hero3 user manuals state, "The HERO3 camera is compatible with 2GB, 4GB, 8GB, 16GB, 32GB, and 64GB capacity microSD, microSDHC and microDSXC memory cards."

b. The manuals do not specify or endorse any particular brands of memory cards.

c. The manuals do not indicate any particular type of memory cards that must be used in looping mode.

24. When purchasers have attempted to solve problems with the Hero3, either with software updates or by replacing the memory card, these attempts have been ineffective.

25. GoPro offers an express written warranty on the Hero3. The warranty provides in relevant part,

> GoPro products and accessories are guaranteed against manufacturing defects one (1) year from the original date of purchase. GoPro's sole obligation in the event of such defects during this period is to repair or replace the defective part or product with a comparable part or product at GoPro's sole discretion.

26. When individual purchasers inform GoPro regarding Hero3's failures, GoPro has also offered to repair or replace that purchaser's Hero3.

a. To the extent GoPro's customer service is overwhelmed and inadequate to handle the volume of customer complaints as discussed below, the repair/replace process is so burdensome as to be illusory.

b. To the extent GoPro has purportedly repaired purchasers' Hero3s, these repairs are ineffective.

c. To the extent GoPro has replaced purchasers' Hero3s, these replacements continue to have the same failures.

**B.     Allegations Regarding Plaintiff Andrew Roley**

27. Plaintiff purchased his GoPro Hero3 Black from IslandSurf.com on or about January 30, 2013. He purchased his Battery BacPac on February 8, 2013.

28. The primary reason Plaintiff purchased this Hero3 was for filming on his motorcycle.

29. Plaintiff also purchased a BacPac to extend the battery life of his Hero3 while filming on his motorcycle and protect his purchases from debris.

30. While attempting to charge his Hero3 using the pass-through charging feature of the BacPac, the Hero3 correctly charged but the BacPac did not. He attempted plugging and unplugging the BacPac, but it had no effect. The BacPac would only charge when it was disconnected from the Hero3. The problem continued after Plaintiff installed GoPro's software updates.

31. When Plaintiff attempted to use the looping feature on his Hero3, it caused the camera to freeze.

32. Plaintiff also observed that his Hero3 would experience sudden power failures, ceasing recording and shutting off regardless of whether he had the camera in "auto off" mode.

33. In addition, Plaintiff's Hero3 frequently fails to turn on when the power button is pressed. When Plaintiff informed GoPro of this defect, the company told him to "remove and reinsert the battery." This procedure was ineffective and also impractical when Plaintiff was using the camera underwater, in the rain, wearing gloves, or using the Hero3 in various other circumstances for which GoPro markets the product.

34. When Plaintiff contacted GoPro's customer service about the problem, GoPro initially told him that pass-through charging was not fully supported on his Hero3. GoPro then recanted this statement, claiming that its software updates should have resolved the problem.

35. When Plaintiff told GoPro that the software problem did not in fact resolve the problem, GoPro offered to replace the BacPac but refused to pay the cost of returning the defective BacPac.

36. When Plaintiff received a replacement BacPac, he again attempted to use the pass-through charging feature, but it again failed. The battery died midway through motorcycle rides and would only charge correctly when it was separated from Plaintiff's Hero3.

37. Plaintiff's Hero3 also stopped functioning. After charging it, Plaintiff was unable to turn his Hero3 back on. When he reported the problem to GoPro, its customer service department told him the problem was with the camera.

38. GoPro replaced Plaintiff's Hero3 on three occasions, but none of the cameras was completely functional. Eventually Plaintiff demanded that GoPro replace his Hero3 with the new Hero3+, but GoPro refused. Instead, GoPro told him to follow more troubleshooting steps, none of which resolved the problems he was experiencing with his Hero3.

39. GoPro also told Plaintiff that he could receive a refund if he requested on within 30 days of receiving a replacement. In reliance on this representation, Plaintiff requested a full refund for his Hero3 within 30 days of receiving his next replacement camera.

40. GoPro refused to honor Plaintiff's request for a reimbursement, telling him for the first time that his request had to be within 30 days of his original Hero3 purchase. It instead told Plaintiff that he could select a product from the "Mounts" section of its website, none of which retails for more than 20 percent of the cost of the Hero3. GoPro eventually sent Plaintiff Skeleton Housing unit, which is usually sold for $49.99.

41. Plaintiff never received a fully functioning camera from Hero3 nor did he receive a full reimbursement for his purchase of a defective product from GoPro.

**C.     Class Action Allegations**

42. This action is brought and properly maintained as a class action, under Fed. R. Civ. P. 23, on behalf of a Class defined as follows:

> All individuals or entities residing in the United States and its possessions who purchased GoPro Hero3 cameras.

43. The Class shall not include Defendant, any entity in which GoPro has a controlling interest, or GoPro's agents, assigns, successors, and legal representatives.

44. The Class shall not include any individual or entity that previously commenced a lawsuit against GoPro arising out of the subject matter of this complaint.

45. The Class shall not include the Judge assigned to this case and any member of the Judge's immediate family.

46. The Class is so numerous that individual joinder is impracticable. The actual number of Class members is not precisely known but will likely number in the thousands. GoPro has information that makes it feasible to determine the number of Class members.

47. This complaint presents questions of law and fact that are common to Plaintiff and the Class, and these questions predominate over any issues that may affect individual Class members. These questions include, but are not limited to, the following:

    a. Whether the Hero3 properly operates in looping mode and continuously recording video as described in GoPro's marketing, advertising, or product manuals.

    b. Whether the Hero3 has a defect that prevents reliable operation of looping mode.

    c. Whether the Hero3 has a defect that prevents reliable operation of its internal clock.

    d. Whether the Hero3 fails to charge correctly when attached to the BacPac.

    e. Whether the Hero3's power button functions in a reliable and proper fashion.

    f. Whether the Hero3's defects rendered it unsuitable for its reasonable and anticipated uses.

    g. Whether GoPro knew or should have known of defects with the Hero3 looping mode feature before making it available for purchase by the Class.

    h. Whether GoPro violated legal duties to Plaintiff and the Class through its design, manufacture, marketing, advertising, or sale of the Hero3 to the Class.

    i. Whether GoPro violated legal duties to Plaintiff and the Class by failing to notify consumers, or take other appropriate remedial action, regarding the Hero3's defects.

    j. Whether GoPro breached implied or express warranties for the Hero3 by selling the Hero3 with defects.

      k. Whether the Hero3's express warranty fails of its essential purpose due to GoPro's inability or unwillingness to repair or replace the Hero3 such that its power button, looping mode, date retention, uninterrupted recording, and battery charging features become operational.

      l. Whether GoPro made deceptive or misleading representations, through its marketing and advertising, by claiming the Hero3 had functional power button, looping mode, date retention, uninterrupted recording, and battery charging features.

48. Plaintiff's claim is typical of the Class in that Plaintiff, like all Class members, purchased a Hero3 with the expectation it would reliably and continuously turn on, recharge, record video without interruption, and remain on when not in "auto off" mode when in fact the Hero3 did not have a reliably functioning internal clock or looping mode and did not operate correctly.

49. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained experienced counsel with the necessary expertise and resources to prosecute a class action. Plaintiff and his counsel do not anticipate circumstances where Plaintiff's interests would be adverse to those of the Class.

50. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

      a. Because the costs of prosecution would likely surpass individual Class members' damages, it is economically impractical for Class members to pursue individual actions.

      b. Without class action, Plaintiff and Class members have no effective remedy to recover their damages. Class action allows Class members to assert their rights while conserving the resources of this Court and the parties.

      c. Class action prevents inconsistent judgments from arising out of various individual actions before different courts.

51. Defendant has acted or refused to act on grounds that generally apply to the Class such that final injunctive or declaratory relief is appropriate. These grounds include, but are not limited, to the following:

    a. Whether GoPro made deceptive or misleading representations, through its marketing and advertising, by claiming the Hero3 had a functional looping mode.

    b. Whether failures of the Hero3's looping mode constituted a manufacturing defect within the meaning of the Hero3's express written warranty.

    c. Whether the Hero3's express warranty fails of its essential purpose due to GoPro's inability or unwillingness to repair or replace the Hero3 such that its power button, looping mode, date retention, uninterrupted recording, and battery charging featureswork reliably.

    d. Whether procedures are needed to warn or inform consumers about the functional deficiencies in the Hero3's power button, looping mode, date retention, uninterrupted recording, and battery charging features.

## CAUSES OF ACTION

### COUNT I
### California False Advertising Law
### (CAL. BUS. & PROF. CODE §§ 17500 *et seq*.)

52. Plaintiff re-alleges and incorporates by reference the allegations set forth in this Class Action Complaint.

53. GoPro is a "person" within the meaning of CAL. BUS. & PROF. CODE § 17506.

54. By representing to the general public, including Plaintiff and the putative Class Members, that the Hero3 has fully functioning power button, looping mode, date retention, uninterrupted recording, and battery charging features, Defendant engaged in false and misleading practices prohibited by the California False Advertising Law (CFAL).

55. In addition to being false, GoPro's advertisements and representations are also misleading and have the capacity, likelihood, and tendency to deceive and confuse consumers, including Plaintiff and the putative Class Members.

56. GoPro knew, or would have known with the exercise of reasonable care that its advertisements and representations about the features of the Hero3 were false and misleading.

57. GoPro made these false and misleading advertisements and misrepresentations with the intent of inducing consumers to purchase the Hero3.

58. Plaintiff purchased a Hero3 in reliance on Defendant's false and misleading advertisements and representations about the product. Plaintiff would have foregone purchasing GoPro's product had he known that the Hero3 was unreliable and did not possess the features that GoPro's advertisements attributed to it.

59. As a result of the foregoing acts, omissions, and practices, Plaintiff and the putative Class Members have suffered actual damages as described herein.

60. Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiff seeks an order of this Court enjoining Defendant from continuing with the advertisements and representations about its Hero3 and requests an order awarding Plaintiff and the putative Class Members restitution of the money wrongfully acquired by GoPro.

**COUNT II**
**Violation of California Unfair Competition Law**
**CAL. BUS. & PROF. CODE § 17200, et seq.**
**("unfair" and "fraudulent" elements)**

61. Plaintiff re-alleges and incorporates by reference the allegations set forth in this Class Action Complaint.

62. Plaintiff purchased a Hero3 in reliance on GoPro's false and misleading advertisements and representations about the product. Plaintiff would not have purchased GoPro's products had he known that the Hero3 was unreliable and did not possess the features that GoPro's advertisements claimed it has.

63. GoPro's false and misleading representations about the features of its Hero3 violate long standing public policy in the United States and California prohibiting businesses from claiming a product has features that in fact lacks or that do not properly or reliably function.

64. GoPro's false promises that the Hero3 has fully functioning power button, looping mode, date retention, uninterrupted recording, and battery charging features are improper and unfounded.

65. GoPro knew or should have known that its claims about the Hero3 were fraudulent and likely to deceive the public, including Plaintiff and the putative Class Members, into believing that the Hero3s have features that they do not possess.

66. Plaintiff purchased a Hero3 in reliance on GoPro's unfair and fraudulent representations about the cameras. Plaintiff would have foregone purchasing GoPro's products had he known that the Hero3 was unreliable and did not possess the features that GoPro's advertisements attributed to it.

67. Plaintiff and the putative Class Members' injuries are substantial and not outweighed by any real benefits to consumers or competition. Plaintiff and the Class Members could not reasonably have avoided the information because GoPro intentionally mislead the consuming public by means of the claims made with respect to the Hero3 as set forth herein.

68. In addition, GoPro's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition; unfair, deceptive, untrue, or misleading advertising; and an unlawful business practice within the meaning of the California law.

69. GoPro's wrongful business practices and procedures constituted, and constitute, a continuing course of conduct of unfair competition.

70. As a result of the foregoing acts, omissions, and practices, Plaintiff and the putative Class Members have suffered actual damages as described herein.

71. Pursuant to Section 17203 of the California Business & Professions Code, Plaintiff and the putative Class Members seek an order of this Court enjoining GoPro from continuing to engage, use, or employ its unfair and fraudulent practice of advertising the sale and use of the Hero3. Likewise, Plaintiff and the putative Class Members seek an order requiring GoPro to cease making the unfair and fraudulent claims about the Hero3 that are described herein. Plaintiff also requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by GoPro by means of responsibility attached to GoPro's false and misleading representations.

**COUNT III**
**Deceit by Concealment**
**CAL. CIV. CODE §§ 1709, 1710**

72. Plaintiff re-alleges and incorporates by reference the allegations set forth in this Class Action Complaint.

73. GoPro made material representations and omissions to the general public, including Plaintiff and the putative Class Members, about the Hero3 that were false and misleading.

74. GoPro knew that its representations about the Hero3 were untrue, or it did not have sufficient knowledge to warrant belief that the representations were true. GoPro made these false representations with intent to induce Plaintiff and the putative Class Members to act in reliance thereon.

75. GoPro willfully deceived Plaintiff and the putative Class Members by concealing the true facts concerning the Hero3. GoPro knew in advance of Plaintiff and the Class Members' intended use of the Hero3 and of unreliability of the power button, looping mode, date retention, uninterrupted recording, and battery charging features.

76. Plaintiff and the putative Class Members reasonably believed that GoPro's representations about the Hero3 were true, and in reliance on those representations, Plaintiff and the putative Class Members purchased Hero3s from Defendant.

77. Plaintiff would have foregone purchasing GoPro's products had he known that the Hero3 was unreliable and did not possess the features that GoPro's advertisements attributed to it.

78. As a result of the foregoing acts, omissions, and practices, Plaintiff and the putative Class Members have suffered actual damages as described herein, and these Class Members are entitled to recover such damages, together with punitive damages, equitable relief, injunctive relief and reasonable attorneys' fees.

### COUNT IV
### Breach of Express Warranty

79. Plaintiff incorporates by reference the factual allegations set forth above.

80. GoPro expressly warranted that the Hero3 had specific functional characteristics, including fully functioning power button, looping mode, date retention, uninterrupted recording, and battery charging features. Through these warranties, GoPro intended to induce consumers to purchase the Hero3. When consumers purchased the Hero3, these warranties became part of the basis for the bargain.

81. GoPro expressly warranted that it would repair or replace manufacturing defects in the Hero3. This warranty encompasses the functionality of the Hero3, including the power button, looping mode, date retention, uninterrupted recording, and battery charging features.

82. GoPro communicated these warranties to ultimate consumers including Plaintiff and Class members.

83. GoPro breached these warranties because, among other defects, the Hero3 does not properly operate in power button, looping mode, does not reliably mark the date and time of video recordings, further unpredictably turns off during recording, and does not reliably charge its batteries when attached to a BacPac.

84. GoPro is unwilling or unable to repair or replace the Hero3 such that it reliably records video without defect or interruption. As a result, to the extent GoPro limits its

warranties to the repair or replacement of the Hero3, such limitations fail of their essential purpose and are unenforceable.

85. Plaintiff has communicated with GoPro regarding the repair or replacement of his Hero3. GoPro's efforts to repair or replace Plaintiff's Hero3 were ineffective and further efforts to repair or replace it would be futile.

86. Due to GoPro's breach, Plaintiff and Class members suffered damages, including but not limited to the cost of a suitable replacement for the Hero3.

87. Plaintiff and the Class demand judgment against GoPro for damages in an amount to be determined at trial and pray for judgment as set forth below.

**COUNT V**
**Breach of Implied Warranty of Merchantability and**
**Fitness for a Particular Purpose**

88. Plaintiff re-alleges and incorporates by reference the allegations set forth in this Class Action Complaint.

89. GoPro developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the Hero3 and, in the course of same conduct, directly advertised or marketed the Hero3 to consumers.

90. GoPro impliedly warranted that its Hero3s were of merchantable quality and fit for the ordinary, common, and intended uses for which the product was sold. Specifically, GoPro falsely impliedly warranted that the Hero3s had fully functioning power button, looping mode, date retention, uninterrupted recording, and battery charging features.

91. GoPro knew, or had reason to know that consumers, including Plaintiff and the putative Class Members, purchased the Hero3s for purposes described above.

92. GoPro knew, or had reason to know, that consumers, including Plaintiff and the putative Class Members, were relying on its skill and judgment to select or furnish a product that was suitable for the particular purposes.

93. GoPro breached its implied warranties of the Hero3s sold to Plaintiff and the putative Class Members because the products were not fit for the particular purposes described above.

94. As a direct and foreseeable result of the foregoing acts, omissions, and practices, Plaintiff and the putative Class Members have suffered actual damages as described herein, and these Class Members are entitled to recover such damages, together with punitive damages, equitable relief, injunctive relief, diminution of value, reasonable attorneys' fees, costs of suit, and such other relief set forth herein.

**COUNT VI**
**Negligent Misrepresentation**

95. Plaintiff re-alleges and incorporates by reference the allegations set forth in this Class Action Complaint.

96. Defendant made misrepresentations to Plaintiff and the putative Class Members, including without limitation, the misrepresentation that Hero3s had fully functioning power button, looping mode, date retention, uninterrupted recording, and battery charging features.

97. Defendant made the foregoing representations without reasonable grounds for believing them to be true. These representations were made directly by GoPro and its authorized agents on the Hero3 packaging and in publications and other written materials directed to the public with the intention of inducing reliance and the purchase and use of the Hero3.

98. The representations by Defendant were in fact false and made with the intention of inducing reliance resulting in the purchase and use of the Hero3s.

99. In reliance on the above misrepresentations by Defendant, Plaintiff and the putative Class Members were induced to purchase and to use the Hero3s. If Plaintiff and the Class Members had known of the true facts and the facts concealed by GoPro, Plaintiff would not have purchased or used the Hero3s.

100. Plaintiff and the putative Class Members' reliance on the misrepresentations by GoPro was justified and reasonable in that such misrepresentations were made by individuals

and entities that held themselves out as experts in the field of video cameras and were in a position to know the actual facts.

101. As a result of the foregoing acts, omissions, and practices, Plaintiff and the putative Class Members have suffered actual damages as described herein, and these Class Members are entitled to recover such damages, together with punitive damages, equitable relief, injunctive relief, diminution of value, reasonable attorneys' fees, costs of suit, and such other relief set forth below.

### COUNT VII
### Unjust Enrichment

102. Plaintiff re-alleges and incorporates by reference the allegations set forth in this Class Action Complaint.

103. As a result of its unlawful conduct described above, GoPro was unjustly enriched.

104. GoPro has benefited from its unlawful acts and it would be inequitable for GoPro to be permitted to retain any of the ill-gotten gains resulting from payments made by Plaintiff and the putative Class Members in reliance on its false, misleading, and unlawful representations about the Hero3s' features.

105. Plaintiff and the putative Class Members' are entitled to the amount of GoPro's ill-gotten gains resulting from its unlawful, unjust, and inequitable conduct.

106. Plaintiff and Class Members may have no adequate other remedy at law.

### PRAYER FOR RELIF

WHEREFORE, Plaintiff prays on behalf of himself and all others similarly situated for the following:

1. Pecuniary damages in excess of $5 million.

2. All damages and relief authorized by law or statute, including but not limited to costs and attorney fees.

CLASS ACTION COMPLAINT 18 of 20

3. Class certification under Civ. R. Civ. P. 23, with Plaintiff duly appointed as Class Representative and Plaintiff's counsel appointed as Class Counsel.

4. Injunctive and declaratory relief as necessary to vindicate the rights of Plaintiff and Class members under any applicable warranties and California's consumer protection laws identified in Counts I through III above.

5. Any other relief this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

Dated: May 19, 2014

Respectfully submitted,

CUNEO GILBERT & LADUCA LLP

*/s/ Michael J. Flannery*
Michael J. Flannery (SBN 196266)
mflannery@cuneolaw.com
300 North Tucker Boulevard, Suite 801
St. Louis, MO 63101
Telephone:  (314) 226-1015
mflannery@cuneolaw.com

Charles J. LaDuca (*pro hac vice* to be filed)
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Telephone:  (202) 789-3960
charles@cuneolaw.com

Seth Leventhal (*pro hac vice* to be filed)
LEVENTHAL PLLC
527 Marquette Avenue South
Minneapolis, MN 55402
Telephone:   (612) 234-7349
seth@levethalpllc.com

Robert K. Shelquist (*pro hac vice* to be filed)
LOCKRIDGE GRINDAL NAUEN, PLLP
Suite 2200
100 Washington Avenue South

Minneapolis, MN  55401
Telephone:  (612) 339-6900
rkshelquist@locklaw.com

David Michael Campbell (*pro hac vice* to be filed)
CAMPBELL LAW
1861 North Crystal Lake Drive
Lakeland, FL 33801
Telephone:  (863) 292-9929
dmcampbell@campbelllaw.com

*Attorneys for Plaintiff Andrew Roley and the Putative Class*